IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONDA BUTLER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of Social Security, | : | NO. 20-6206 |
| Defendant. | : | |

**OPINION**

SCOTT W. REID                                                    DATE: FEBRUARY 24, 2022
UNITED STATES MAGISTRATE JUDGE

    Plaintiff, Ronda Butler, challenges the Commissioner of Social Security's (the "Commissioner") decision to cease her supplemental security income ("SSI") disability benefits under Title XVI of the Social Security Act. *See* 42 U.S.C. § 405(g). For the reasons stated below, Plaintiff's request is **GRANTED,** and the decision of the Commissioner is **REMANDED** for additional proceedings.

**I.     FACTUAL AND PROCEDURAL HISTORY**

    Plaintiff was first found disabled in February 2010 due to her diagnoses of bipolar disorder, major depressive disorder, post-traumatic stress disorder, mood disorder, and urinary incontinence. (Tr. at 131). Over four years later, the State agency conducted a routine Continuing Disability Review ("CDR") and determined that Plaintiff was no longer disabled as of November 2014. (Tr. at 136-37). Her disability benefits were terminated at the end of January 2015. *Id.* Plaintiff subsequently requested reconsideration of the cessation decision but was unsuccessful. (Tr. at 138-39).

    On February 23, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Christine McCafferty, the ALJ for Plaintiff's hearing, issued a decision on October 4,

2018, agreeing with the State agency that Plaintiff was no longer disabled. (Tr. at 140-51). Plaintiff then requested review by the Appeals Council. (Tr. at 285). On September 13, 2019, the Appeals Council granted Plaintiff's request and remanded her case to the ALJ. (Tr. at 156). The Appeals Council directed ALJ McCafferty to: assess Plaintiff's medical improvements (or lack thereof) by comparing prior and current medical evidence; further consider the severity of Plaintiff's impairments, and; expand the record, if warranted. (Tr. at 158).

After the case was remanded, Plaintiff attended another hearing in front of ALJ McCafferty on January 29, 2020. (Tr. at 37-75). A month after the hearing, on February 20, 2020, ALJ McCafferty once again rejected Plaintiff's claim. (Tr. at 12-36). Plaintiff then requested further review by the Appeals Council. (Tr. at 333). This time, the Appeals Council denied Plaintiff's request and found no basis for changing the ALJ's decision. Plaintiff subsequently filed her Complaint in this Court on December 9, 2020. (doc. 1).

## II.  LEGAL STANDARD

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

## III.  CONTINUING DISABILITY REVIEW

When determining whether a claimant's disability continues or ends, an eight-step evaluation process must be followed. The process requires an ALJ to consider: (1) whether the

claimant is performing substantially gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement in claimant's impairment(s) since the time of the most recent favorable decision that found claimant disabled; (4) whether the medical improvement relates to the ability to work; (5) whether an exception to medical improvement applies; (6) whether the claimant's impairments in combination are severe; (7) whether the claimant has retained residual functional capacity and can perform past work; and (8) whether the claimant can perform any other substantial gainful activity. 20 C.F.R. §§ 416.994(b)(5)(i)-(vii).

The Commissioner bears the burden at each step and must establish that the claimant is no longer entitled to benefits. *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). To meet the burden, the Commissioner must also demonstrate that: "(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity." 42 U.S.C. 423(f); *see also* 20 C.F.R. § 404.1594(a) ("We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work."). If substantial evidence supports both prongs, then the Commissioner correctly terminated the claimant's benefits. *Kuzmin*, 714 F.2d at 1238.

IV. **DISCUSSION**

    a. **ALJ McCafferty Did Not Conduct the Proper Analysis for a Continuing Disability Review**

Plaintiff claims that ALJ McCafferty failed to apply the correct legal standards in finding that she was no longer disabled. (doc. 20 at 6). Plaintiff alleges that after the Appeals Council

3

remanded her case, the ALJ failed to conduct a proper analysis which required her to compare the current evidence with the original record and assess whether Plaintiff experienced an improvement in her ability to work. *Id.* at 7.

### i. A Full Comparative Analysis of the Evidence Was Not Performed

SSA regulations define "medical improvement" as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled[.]" 20 C.F.R. § 404.1594(b)(1). A determination that there has been such a decrease in medical severity "must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the] impairment(s)." *Id. See also id.*, § 404.1594(c)(1) (reiterating that medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs and/or laboratory findings associated with" the impairments). If there has been an improvement, the ALJ must then determine whether the decrease in severity of the claimant's impairments has led to an increase in the claimant's functional capacity to work. *Id.* at § 404.1594(b)(3). This analysis, therefore, requires two distinct findings:

> To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled. *See id.* at § 404.1594(b)(7). Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision. *See id.* at § 404.1594(c)(2).

*Shepherd v. Apfel*, 184 F.3d 1196, 1201 (10th Cir. 1999); *see also Smalls v. Comm'r of Soc. Sec.*, 2010 WL 2925102, at *4 (D.N.J. 2010).

In February 2010, at the Comparison Point Decision Date or "CPD", i.e., the time of the Plaintiff's most recent favorable decision, Plaintiff's medically determinable impairments were bipolar disorder, major depressive disorder, post-traumatic stress disorder, and urinary incontinence. (Tr. at 16-17). Those impairments were found to result in Plaintiff having "the residual functional capacity to perform a full range of work at all exertional levels", albeit with several restrictions such as a minimal stress or pressure environment, limited reliance on co-workers, limited interaction with co-workers, no interaction with the general public, and additional unscheduled restroom breaks. *Id*. After evaluating Plaintiff's RFC along with her limitations, an impartial vocational expert opined that there were no jobs in the national economy that Plaintiff could perform. (Tr. at 134). Thus, in 2010, the ALJ assigned to Plaintiff's case at the time – ALJ Flynn – found Plaintiff disabled because her "ability to perform work at all exertional levels ha[d] been compromised by nonexertional limits." *Id.* at 134-35.

In the decision before this Court for review, ALJ McCafferty determined that from November 1, 2014, to the date of her decision (February 20, 2020), Plaintiff suffered from panic disorder, an unspecified depressive disorder, and urinary incontinence. (Tr. at 17). ALJ McCafferty found, however, that "the impairments present at the time of the CPD *decreased in medical severity* to the point where the claimant has had the residual functional capacity to perform a full range of work at all exertional levels." (Tr. at 21) (emphasis added). ALJ McCafferty further opined that Plaintiff "is capable of simple, repetitive tasks with only occasional changes in work setting and occasional contact with the public, coworkers and supervisors. She will have the need for three bathroom breaks during the day lasting approximately 10 minutes." (Tr. at 24).

The medical improvement standard requires an ALJ to conduct a full comparative analysis of all evidence, including that which was used in the prior decision. *See* 20 C.F.R. § 416.993; *see also* 20 C.F.R. § 416.994(b)(2)(iv)(E). This standard protects claimants from arbitrary termination of their disability benefits resulting from *de novo* determinations. H.R. Rep. 98-618, 98th Cong., 2d Sess. 11-13 (1984); S. Rep. 98-466. The issue with ALJ McCafferty's holding is that she did not adequately compare Plaintiff's pre-award medical evidence and post-cessation medical evidence.

For instance, to show medical improvement, ALJ McCafferty relied on many of the same strengths previously cited by ALJ Flynn – even though ALJ Flynn found those strengths were not sufficient to find Plaintiff could work. In stating that Plaintiff's conditions had improved, ALJ McCafferty noted that Plaintiff was cooperative with examiners, well groomed, maintained good hygiene, had dysphoric affect, had intact memory, and did not have suicidal or homicidal ideation. (Tr. at 20). Those same strengths, however, were present as of the ALJ Flynn's initial disability award. *See* (Tr. at 126-35). ALJ Flynn noted that although Plaintiff displayed some strengths, her impairments were too severe for Plaintiff to be employed. (Tr. at 134). Instead of noting the similarities and differences between the Plaintiff's strengths and weaknesses from the CPD, ALJ McCafferty simply cited positive evidence as proof that Plaintiff had gotten better. Doing so is not a proper CDR analysis and reliance on such evidence does not constitute adequate grounds to hold that Plaintiff experienced medical improvement of her conditions.

Similarly, ALJ McCafferty cited evidence that Plaintiff could perform certain activities to find she had improved medically. ALJ McCafferty noted that Plaintiff "relied on her parson and her friends for support … was able to listen to music, and watch T.V. … car[ed] for a teenager on her own … and [was] active[ly] involved with friends and a faith congregation." (Tr. at 20).

She thus concluded that Plaintiff's reported activities "are not consistent with inability to make any work-related decision…" nor do they show that Plaintiff had "only a 'rare' or 'passing' ability to interact with others, as was found at the time of the CPD." (Tr. at 20). These activities, however, were the same activities Plaintiff reported prior to her original disability award in 2010. *See* (Tr. at 126, 836, 838, 840, 872). It is therefore unclear how ALJ McCafferty surmised that Plaintiff had improved when her reports of daily living were essentially the same in 2010 as they were after her disability cessation date in 2014 and beyond.

In the Court's view, ALJ McCafferty did not conduct the proper comparison of Plaintiff's past and current medical evidence. Instead of using an objective measure and setting a baseline, ALJ McCafferty simply used positive observations to support the conclusion that Plaintiff's conditions had improved to the point where she could enter the workforce. This flawed analysis requires me to remand this case for further proceedings. *See Mason v. Shalala*, 994 F.2d 1058, 1060-61 (3d Cir. 1993) ("[t]o assess appellant's current condition for signs of improvement, the ALJ need[s] first to review appellant's medical condition at a comparable point, which under the regulations [is] the date of appellant's last favorable decision finding [her] disabled").

### ii. ALJ McCafferty Neglected to Consider Whether Plaintiff's Conditions Were Subject to Temporary Remission

ALJ McCafferty failed to properly consider and evaluate whether Plaintiff's mental issues were in temporary remission. For CDR improvement cases involving mental illness, an ALJ should consider whether the impairment is subject to temporary remissions and address the foreseeability of future disabling deterioration that would contradict a finding of a claimant's ability to sustain gainful employment. *See* 20 C.F.R. §§ 404.1594I(3)(iv), 416.994I(3)(iv). Section I(3)(iv) explains:

> In some cases the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in

7

> persons with this type of impairment, we will be careful to consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsenings. Improvement in such impairments that is only temporary will not warrant a finding of medical improvement.

20 C.F.R. §§ 404.1594I(3)(iv), 416.994I(3)(iv).

The Third Circuit has yet to address what length of time qualifies as a "temporary remission" pursuant to sections 404.1594I(3)(iv), 416.994I(3)(iv). The District Court of South Dakota in *Darnell v. Berryhill*, however, discussed at length the relevant agency guidance and cases from different jurisdictions addressing temporary remissions. 2018 WL 1306281, at *28–30 (D.S.D. 2018). The Court in *Darnell v. Berryhill* explained:

> The Commissioner does not define "temporary" in its regulation, but does provide further guidance in its Program Operations Manual System (POMS). The Commissioner states "[s]ome impairments are subject to temporary remissions, which can give the appearance of medical improvement (MI) when in fact there has been none. These types of impairments can appear to be in remission when, in fact, the impairments are only stabilized." POMS DI 28010.115A. In considering whether a temporary remission or medical improvement has occurred, the Commissioner directs ALJs to consider the longitudinal history of the impairment, -all the available evidence, and the medical literature about the disease. *Id*. at B1b. The Commissioner lists several impairments which are especially subject to temporary remission; mental impairments are among those listed. *Id*. at B2. As to the question "how long is temporary," the Commissioner states "temporary" must be viewed in the light of the longitudinal history of the impairment and the period of remission must have been long enough to have a significant impact on the individual's ability to work. *Id.* at B3.

*Darnell*, 2018 WL 1306281, at *28. In reviewing cases across the nation, the *Darnell* Court noted cases remanding for consideration of temporary remissions spanning a couple months to a couple years. *See Darnell*, 2018 WL 1306281, at *28-30 (collecting cases). For example, the District Court of Nevada remanded in *Carlson v. Shalala*, finding the ALJ needed to address whether a claimant's alleviation from the severity of schizophrenic symptoms from June 1983 to January 1986 qualified as a temporary remission. *See Carlson v. Shalala*, 841 F. Supp. 1031, 1037–39 (D. Nev. 1993). In this case, the ALJ determined medical improvement occurred

8

November 1, 2014, but did not consider the possibility of remission or the "prospects for future worsening". 20 C.F.R. §§ 404.1594I(3)(iv), 416.994I(3)(iv); *see Carlson*, 841 F.Supp. at 1037-39 (concluding the ALJ needed to address the claimant's ability to successfully sustain employment).

Here, the totality of the record suggests Plaintiff has taken self-isolating measures to minimize stressors. The removal of her safeguards and entering the workforce could exacerbate her issues. As the Ninth Circuit has explained:

> Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). *Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. See* [*Ryan v. Comm'r of Soc. Sec.*, 528 F. 3d 1194, 1200-01 (9th Cir. 2008)] ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."). *They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. See, e.g.*, [*Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)] ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

*Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014) (emphasis added).

The overall longitudinal picture of Plaintiff's impairment here is obscured by ALJ McCafferty's emphasis of some, positive facts, and omission of other, contradictory facts to demonstrate improvement. *See Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014); *Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (finding error where the ALJ's emphasis

on isolated records failed to acknowledge the claimant's symptoms waxed and waned throughout her substantial period of treatment); *Hutsell v. Massanari*, 259 F.3d 707, 711-14 (8th Cir. 2001); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

     For example, ALJ McCafferty points to a December 2014 Function Report ("Function Report") (Tr. at 372-79) to support findings that Plaintiff had moderate limitations in: understanding, remembering, or applying information; interacting with others; ability to concentrate, persist, or maintain pace; and ability to adapt or manage herself. The ALJ highlights aspects of the Function Report such as Plaintiff's reports of being able to prepare meals, shop in stores, attend church, and handle self-care and personal hygiene. (Tr. at 373-75). A closer look at the Function Report, however, shows that the ALJ's highlights are either mischaracterizations or an incomplete review of the record. Plaintiff reported that although she can do things such as prepare meals, shop in stores, attend church, and handle self-care and personal hygiene, her ability to do so suffers when she is depressed or anxious. *Id*. She claimed she sometimes has difficulty getting out of bed and that on those days she would not clean or wash herself. *Id.*. Moreover, she reported she needed reminders to take care of her personal needs and grooming, as well as reminders to take medication. *Id*. In terms of preparing meals, Plaintiff stated she made sandwiches and frozen dinners only up to five days a month. *Id.* She also indicated that she only leaves her house two to three days a week to buy food and go to church. *Id.*; *see Smith v.*

*Califano*, 637 F.2d 968, 971 (3d Cir. 1981) ("shopping for necessities of life is not a negation of disability…"). Finally, Plaintiff reported that she still had difficulties getting along with friends, family, neighbors, and others, due to her erratic mood. *Id.*.

In another instance, ALJ McCafferty cited the Disability Hearing Officer's Report of Disability Hearing from February 2016 ("Hearing Officer's Report") (Tr. at 168-179) as evidence that Plaintiff had improved her ability to socialize and get along with others – something that was an issue at the CPD. (Tr. at 132-33). The ALJ described Plaintiff's reports of talking to her neighbors, shopping, and maintaining a driver's license as signs of improvement. (Tr. at 19) The ALJ's analysis of the Hearing Officer's Report, however, does not consider that such signs of improvement could be explained by measures Plaintiff has taken to minimize stressors which cause her issues. For example, Plaintiff explained that she can only take people in doses and that she would throw people out of her house because she can only take so much of them. (Tr. at 174). Moreover, while Plaintiff maintains a driver's license, she does not drive because she is concerned that if depressed, she could become suicidal and drive her car into a wall. (Tr. at 173). ALJ McCafferty also noted that although Plaintiff's son testified that his mother could sometimes get "'loud, rowdy, [and] ready to fight' … he did not describe outbursts of uncontrollable rage, as the [Plaintiff] reported to the consultive examiners prior to the CPD." (Tr. at 19) (*citing* Hearing Officer's Report at 3, 7). While ALJ McCafferty accurately described Plaintiff's son's testimony, she ignored other parts of the Hearing Officer's Report which detailed that Plaintiff: "can snap"; experiences anxiety and panic; is told by people that she "gets excited"; and stays quiet because she fears "she could say something that people would not like." (Tr. at 170-72). Such inconsistencies in reporting should be evaluated by considering measures

Plaintiff takes to limit the amount of time she spends outside her home and with other people. The ALJ must take this into account.

ALJ McCafferty's conclusion that Plaintiff experienced medical improvement does not address potential relapses or the self-isolating measures Plaintiff has taken to minimize stressors, and failure to address this constitutes error. *See Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (finding error where the ALJ failed to address the effect that claimant's structured living environment had in stabilizing the impairment symptoms); *Hutsell v. Massanari*, 259 F.3d 707, 711-14 (finding error where the ALJ failed to address the claimant's structured living environment in alleviating symptoms of schizoaffective disorder). Accordingly, I remand this case for further evaluation.

### b. Plaintiff's Remaining Claims

Because I remand this case based on the ALJ's failure to properly evaluate the record, I do not address Plaintiff's remaining claims. *See Steininger v. Barnhart*, 2005 WL 2077375 at *4 (E.D. Pa. 2005) (not addressing additional arguments because ALJ may reverse her findings after remand).

### V. CONCLUSION

The ALJ's February 2020 finding that Plaintiff experienced medical improvement related to her ability to work is not supported by substantial evidence. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Opinion.

BY THE COURT:

*/s/ Scott W. Reid*

SCOTT W. REID, J.
UNITED STATES MAGISTRATE JUDGE